424 So.2d 496 (1982)
Harry FRIEDMAN
v.
HOFCHAR, INC.
No. 5-170.
Court of Appeal of Louisiana, Fifth Circuit.
December 9, 1982.
Rehearing Denied January 17, 1983.
*497 Andrew I. Brown, Albert F. Widmer, Jr., New Orleans, for plaintiff-appellee.
Charles E. McHale, Jr., New Orleans, for defendant-appellant.
Before CHEHARDY, GAUDIN and DUFRESNE, JJ.
GAUDIN, Judge.
This eviction suit was filed in the Twenty-Fourth Judicial District Court by Harry Friedman against Hofchar, Inc., alleging that said defendant had violated lease provisions by not paying the rent, taxes and insurance premiums. Hofchar was operating a discotheque lounge at 3713 Kim Street in Metairie, Louisiana, known as the Crash Landing.
On July 22, 1981, a judgment was rendered against Hofchar, ordering it to vacate the premises within 30 days and to pay to Friedman "... the ad valorem taxes and insurance premiums called for in the ... lease ..."
The judgment, however, did not specify the amount of the ad valorem taxes and insurance premiums.
Hofchar timely lodged a devolutive appeal, contending that:
(1) There was a lack of proper service of process of the petition;
(2) Taxes and insurance were to be paid by Friedman, not Hofchar;
(3) Hofchar was not given its right of first refusal following an offer to purchase tendered to Friedman by a third party; and
(4) The money judgment in favor of Friedman was procedurally improper.
While the appeal was pending, Friedman filed a motion for summary judgment, stating:
(1) That Article 2088(7) of the Louisiana Code of Civil Procedure allows the Trial Court to retain jurisdiction over the execution of this judgment despite defendant's appeal, and
(2) That the pleadings, exhibits and sworn affidavits annexed hereto show that there is no genuine issue of material fact as to the amount to be repaid plaintiff by defendant and that plaintiff is, therefore, entitled to a judgment as a matter of law.
Hofchar objected to the motion because Friedman had petitioned for possession of the premises only and had not asked for a money judgment. The allegation that the taxes and insurance had not been paid by Hofchar was used solely to prove default under the terms and conditions of the lease.
Nonetheless, on January 26, 1982, judgment was granted on the motion, ordering Hofchar to pay $7,330.28 to Friedman ($4,749.08 for taxes and $2,581.20 for insurance premiums paid by Friedman).
Hofchar appealed suspensively from the money judgment rendered against it, and this appeal was consolidated with Hofchar's original appeal.
After carefully considering both appeals, we conclude that the testimony and evidence supports the judgment ordering Hofchar to vacate the premises, but that the money judgment in favor of Friedman and against Hofchar cannot stand.

SERVICE OF PROCESS
Hofchar's initial contention on appeal is that improper service of process was made by a court-appointed special agent, Paul Sehrt, who effected service in accord with LSA-C.C.P. art. 4703, which reads:

*498 "If the premises are abandoned or closed, or if the whereabouts of the lessee or occupant is unknown, all notices, process, pleadings, and orders required to be delivered or served on the lessee or occupant... may be attached to a door of the premises, and this shall have the same effect as delivery to, or personal service, on, the lessee or occupant."
This type of service is called "tacking", and can be used by a lessor if the premises have been abandoned or closed, or when the whereabouts of the lessee is unknown.
Sehrt testified that he first went to 3713 Kim Street, which was specified in the lease as Hofchar's address. Actually, it was the residence of Daniel Hof, Hofchar's president.
A woman answered the door and advised Sehrt that Hof hadn't lived at that address for three years and that she didn't know where Hof could be located.
Sehrt then went to the leased premises, but it was closed.
Later the same day, Sehrt made contact with Albert Charbonnet, Hof's business partner but he (Charbonnet) refused to accept the petition. Charbonnet is the "char" in Hofchar.
Sehrt returned to the Crash Landing at approximately 6 p.m. and found that "... the door was locked and there was nobody in the parking lot..." Therefore, Sehrt said, he "... taped the papers..." to the front door.
Art. 4703 service of process was thoroughly discussed in Jourbert v. Tatum, 332 So.2d 553 (La.App. 4th Cir.1976). The court held the "tacking" procedure constitutional and not violative of the tenant's due process rights, and further stated that whether such service can be used by a lessor is a factual question to be determined by the trial court.
Considering (1) the reality that Hof had apparently abandoned the Kim Street house designated in the lease as Hofchar's official domicile, (2) Sehrt's unsuccessful attempt to deliver the pleadings to Charbonnet and (3) the fact that nobody was present twice at the leased premises, we cannot say that the trial court erred in allowing Friedman to use the "tacking" service of process method.

TAXES AND INSURANCE PREMIUMS
According to the original lease agreement, Friedman was to pay taxes and insurance premiums until December 3, 1979, thereafter Hofchar was responsible.
The original lease is dated June 2, 1977, and there were two subsequent amendments executed by the parties, one on June 22, 1979, and the other on December 11, 1979.
Neither of the amendments changed Friedman's obligation to pay taxes and insurance premiums up to December 31, 1979, and Hofchar's responsibility to thereafter pay taxes and premiums.
In fact, the amendments did not even mention taxes or insurance premiums. The December 11, 1979, amendment was concerned with a two-year extension of the lease and with Hofchar's right of first refusal should Friedman receive an offer to purchase the Crash Landing, and the agreement went on to state:
"All other terms and conditions of our original lease ... shall remain in full force and effect."
On February 25, 1981, certified letters were mailed to Hofchar at both 3713 Kim Street and the Crash Landing address advising that Hofchar was in default by not paying the taxes and insurance premiums. Both letters were unclaimed and were returned. The petition for possession of the premises was filed on June 24, 1981.
Hofchar does not claim that it ever paid taxes or insurance premiums; instead, it contends that it was Friedman's continuing obligation (beyond December 31, 1979) to pay for these items.
To justify this position, Hofchar points out that the original lease was extended by a two-year option beginning January 1, 1978, and ending on December 31, 1979, and further extended by another two-year option effective January 1, 1980. Thus, Hofchar *499 contends, Friedman's obligation to pay taxes and insurance premiums continued past December 31, 1979, despite the clear wording to the contrary. The district judge was not impressed by this unique approach, nor are we.
In his "Reasons for Judgment" dated July 22, 1981, the trial judge found "... that the notice to the defendant as to the taxes due, was sufficient ..." as the notice was sent to Hofchar's address as stated in the lease agreement. The "Reasons for Judgment" further state that "... defendant never notified the plaintiff that this address was incorrect..."
In our opinion, failure by Hofchar to pay the taxes and insurance premiums as clearly called for in the lease justified the district court's order for Hofchar to vacate the leased premises.

RIGHT OF FIRST REFUSAL
By amendment to the original lease agreement, Friedman agreed that if he should receive an offer to purchase the Crash Landing, Hofchar would be given "... 90 days written notice of ... intention to sell the building, at which time the lease shall terminate unless we (Hofchar) elect to purchase the building on the same terms and conditions as made by a third party..."
Friedman did receive a $350,000.00 offer, the terms and conditions of which were forwarded to Hofchar.
Hofchar requested more information, fearful that the offer was not bona fide. However, Friedman would not reveal the name of the potential buyers because, he said, "... the people did not want their name divulged."
Friedman contends that he complied with the lease agreement by giving Hofchar the "terms and conditions" of the offer; while Hofchar, apparently not convinced that the offer was not a sham, declined to match the $350,000.00 price. Hofchar argues that Friedman, to prove that the offer was legitimate, was required to provide Hofchar with the name of the persons submitting the offer or a copy of the actual agreement to purchase.
Hofchar cites Crawford v. Deshotels, 351 So.2d 295 (La.App. 3rd Cir.1977), but the facts and circumstances of Crawford are different from those now before us.
Hofchar did not see the third party's formal and legitimate offer to purchase until the trial of this matter on July 17, 1981, when the offer was placed in evidence. The property was in fact sold for $350,000.00 on September 1, 1981; and we note that at no time, either before or after July 17, 1981, did Hofchar advise Friedman that it would exercise its option to purchase the Crash Landing site for $350,000.00.
Had Hofchar paid the taxes and insurance premiums in accord with the original lease, it would have been in better legal posture to defend against a petition for possession based only on a proposed sale, the terms and conditions of which were unmatched by Hofchar after the required 90-day notice. But such is not the case.

THE MONEY JUDGMENT
As aforesaid, Friedman petitioned for possession of leased premises as authorized by Title XI of the Louisiana Code of Civil Procedure. He did not ask for a money judgment.
Service of process was by the "tacking" procedure, which does not subject the lessee personally to the court's jurisdiction.
This was a summary proceeding, and the Supreme Court of Louisiana has said, in Major v. Hall, 262 La. 243, 263 So.2d 22 (1972), that money damages are not recoverable in summary proceedings on a rule to show cause.
From Major:

"Damages, in the absence of special provisions, may only be recovered via ordinaria."

Title XI does not contain any "special provisions" allowing a lessor to recover anything but the leased premises via the summary process. The lessor may, of course, proceed via ordinaria to recover unpaid rent or anything else owed by the lessee.
*500 Accordingly, the money judgment in favor of Friedman in this possession suit was inappropriate.

CONCLUSION
We affirm the judgment of the Twenty-Fourth Judicial District Court ordering Hofchar to vacate the Crash Landing premises because of nonpayment of taxes and insurance premiums; and we annul and set aside the judgment in favor of Friedman and against Hofchar in the sum of $7,330.28.
AFFIRMED IN PART, REVERSED IN PART.