699 So.2d 90 (1997)
TOURO INFIRMARY
v.
MARINE MEDICAL UNIT, INC.
No. 96-CA-2506.
Court of Appeal of Louisiana, Fourth Circuit.
May 21, 1997.
Writ Denied October 3, 1997.
*91 A. Bowdre Banks, Jr., New Orleans, for Appellee.
Lynn Lachin Lightfoot, Wendy K. Lappenga, Smith Martin, New Orleans, for Appellant.
Before BYRNES, CIACCIO and JONES, JJ.
BYRNES, Judge.
Touro Infirmary (Touro) brought this action against Marine Medical Unit, Inc. (MMU) to recover unpaid medical bills on an open account for the treatment of foreign seamen for which Touro claims MMU is primarily liable. After a bench trial, Touro was awarded a judgment of $20,000.00.[1] We affirm as amended.
The trial court did not render reasons for judgment. Touro alleges that it is the open account creditor of MMU whereby Touro provided medical treatment for MMU's patients for whom MMU could not provide adequate treatment. Dorothy Spencer, collections supervisor at Touro, testified on behalf of Touro that Touro had been billing MMU directly for such services on a monthly basis for many years. Spencer testified that at no time did MMU contact any personnel at Touro, by writing or otherwise, to indicate that billing statements should not be sent to MMU or that MMU should not appear as the responsible party. MMU did not request that the patient or the patient's employer be billed directly. With regard to accounts involving treatment to patients other than those in this litigation, MMU made payment directly to Touro. Spencer's testimony is supported by copies of such billings which show that they were addressed to MMU and not to the patient for whom Touro provided the services care of MMU. Nor were they addressed to the individual patient care of MMU. The trial court rendered judgment in favor of Touro for its jurisdictional limit of $20,000.00.
MMU does not dispute any of these facts. MMU contends that it has never entered into a written agreement to guarantee the payment of the patients' bills, and that when it paid such bills it did so only as the agent for the patient. MMU denies the existence of any agreement to be primarily liable to Touro. MMU argues that as there is no written agreement, it is incumbent upon Touro to prove the existence of an oral contract. MMU contends that Spencer's testimony about the correctness of account and the fact that it had been paid pursuant to monthly billings direct to MMU for many years was insufficient to fulfill the requirements of LSA-C.C. art. 1846 where Ms. Spencer did not have first hand knowledge of the confection of the original arrangement between Touro and MMU. LSA-C.C. art. 1846 requires in pertinent part that:
If the price or value is in excess of five hundred dollars, the contract must be proved by at least one witness and other corroborating circumstances.
MMU interprets this to mean that Touro must produce a witness to testify with first hand knowledge to the confection of the agreement upon which the open account is based, which Touro did not do.
But LSA-C.C.P. art. 1702 provides in pertinent part:
A. A judgment of default must be confirmed by proof of the demand sufficient to establish a prima facie case ...
* * * * * *
B.(3) When the sum is due on an open account or a promissory note or other negotiable instrument, an affidavit of the correctness thereof shall be prima facie proof....
As this Court recently noted in Barham v. Richard, 97-C-0186 (La.App. 4 Cir. 4/9/97); 692 So.2d 1357, and Olinde v. Couvillion, 94-1275 (La.App. 4 Cir. 2/23/95), 650 So.2d 1241, the law treats open accounts differently from contracts generally. See also Operational Technologies Corp. v. Environmental *92 Contractors, Inc., 95-0413 (La. App. 1 Cir. 11/9/95); 665 So.2d 14. LSA-C.C.P. art. 1702 declares that an affidavit of correctness is sufficient proof to establish a prima facie case on default. A prima facie case is established when the plaintiff proves the essential elements of its petition with competent evidence as fully as if each allegation of plaintiff's petition has been denied. Clary v. D'Agostino, 95-0447 (La.App. 1 Cir. 12/15/95); 665 So.2d 792; Carroll v. Coleman, 27,861 (La.App. 2 Cir. 1/24/96); 666 So.2d 1264; Orleans Sheet Metal Works and Roofing, Inc. v. Landis Co., Inc., 96-0029 (La.App. 4 Cir. 7/24/96), 678 So.2d 73. Therefore, we conclude that it was sufficient for Touro to produce Spencer's credible testimony[2] in support of the account records as to the correctness of the account. The nature of the agreement underlying the account can be determined from other corroborating circumstances and reasonable inferences to be drawn from the evidence. In other words, witness testimony is not the only way in which the existence of the underlying agreement upon which the open account is based may be proved.
In this case the trial court could reasonably infer the existence of such an agreement from the fact that the account had been billed monthly directly to MMU for an extended period of time and paid accordingly. This inference is reinforced by the fact it is unlikely that Touro would have accepted such foreign patient referrals in the absence of such an understanding, as the prospects of collecting from the foreign seamen are problematic at best.
MMU's only witness testified that MMU could not remain in business long without the ability to make such patient referrals. This provided the trial court a basis consistent with the record as a whole for the reasonable inference implicit in its judgment that MMU consented to be primarily liable to Touro in order to maintain the referral relationship. We find no manifest error.
Plaintiff's First Amended Petition On Open Account prays for $15,263.72. However, the face of the record shows the $15,263.72 figure to be a calculation error. The $15,263.72 is the total of a list of charges contained in the petition that actually totals $17,117.14. Based on credit for payments made in connection with certain of the enumerated charges, the parties were able to agree that the correctness of the amounts of billings encompassed by Touro's petitions was $15,905.14. Of the amounts set forth in the petition the parties were unable to agree on the correctness of the $770.00 amount claimed in connection with Norbert Schneider which MMU contends was paid. The trial court judgment is silent on this issue. Touro contends that it proved its claim for the $770.00 at trial.
The trial court judgment was for the $20,000.00 jurisdictional limit of the First City Court, an amount obviously in excess of what could be supported by the $15,905.14 total of the amounts itemized in the First Amended Petition. MMU explains this by saying in brief that the trial court must have included in the judgment a $5,758.01 bill for medical services for Pedro Rigueline which was not among those billings enumerated in the petition. Touro agrees with this explanation.
MMU contends that it was error for the trial court to include the $5,758.01 Rigueline billing in its judgment when it was not listed in the petition. MMU entered a contemporaneous objection to the admission of this $5,758.01 billing into evidence stating that MMU:
"... was not prepared this morning to go forward on the issue of whether this additional sum of $5,758.01 was or is owed, as it was not included in the petition.... If I'm not alerted that this is an additional collection matter that we need to look into to research then I would object to us addressing that matter today."
Touro then argued to the trial judge that copies of the $5,758.01 statement had previously been sent to MMU and its counsel: "It's no surprise." Touro further argued *93 that MMU knew that Touro was treating Rigueline because the First Amended Petition did include other billings for him. The trial court then addressed counsel for MMU:
All right. If you're not prepared, what we can do is we'll go through the whole thing and I'll just suspend it until you have a chance and you can come back and either disprove it or do whatever you want to do.
To which counsel for MMU responded: "Okay. All right." We interpret this as MMU's counsel agreeing to withdraw its objection contingent upon MMU being afforded the opportunity to "come back" at some unspecified future date and attempt to disprove the $5,758.01 billing. However, on the day following the hearing the trial court rendered and signed the judgment that is the subject of this appeal which included the disputed billing in the amount awarded. As the record reflects that MMU was given no reasonable opportunity to "come back" to contest the disputed $5,758.01 billing its contemporaneous objection to the introduction of evidence of that billing still stands.
Touro did not ask for leave to amend its petition. The trial court did not grant an amendment. MMU entered a timely objection. It was error for the trial court to include the additional $5,758.01 billing in its judgment. Therefore, the judgment cannot exceed the amounts of the billings set forth in Touro's petitions, i.e., the $15,905.14 which the parties agreed is correct as to amount, plus the $770.00 for Norbert Schneider, for a maximum possible recovery of $16,675.14. However, we find that the trial judge's error in receiving the bill for $5,758.01 has no bearing on the validity of his other findings in this matter regarding the balance of Touro's claim.
As to the disputed billing of $770.00 for Norbert Schneider which MMU contends was paid, we find that implicit in the judgment of the trial court is a finding that it was not paid. The payment of this amount on the open account by MMU is an affirmative defense which MMU was required to specifically plead. LSA-C.C.P. art. 1005; Sessions, Fishman, Rosenson, Etc. v. Taddonio, 490 So.2d 526, 527 (La.App. 4 Cir.1986). MMU failed to plead the defense of payment, filing instead only a general denial. A mere general denial cannot suffice to prove an affirmative defense over objection at trial. Id. MMU attempted to introduce exhibit "D-1", a "Voucher History Report," in support of this affirmative defense. This was the only exhibit offered by MMU at trial. Touro objected to the introduction of this exhibit because there was nothing to indicate that it was connected to the $770.00 billing. Norbert Schneider's name appeared nowhere on the exhibit, nor did the figure $770.00. As the exhibit was not admitted without objection, it cannot be considered as having enlarged the pleadings.
Mr. Smith, MMU's only witness, testified that a check stub existed which could show that a payment was made on Norbert Schneider's account, but he had neglected to bring it with him to court. He also alleged that an overage existed on another account that had been applied to Norbert Schneider's account, but there was no documentary evidence to substantiate it. Therefore, we find, after reviewing the record as a whole, that even if MMU's affirmative defense of payment of the $770.00 bill were properly before the court, MMU failed to bear its burden of proof.[3] The trial court obviously found Touro's witness credible regarding all other items claimed. The record reveals no reason why the trial court would not have also believed Spencer's testimony in support of Touro's claim for $770.00 in connection with Norbert Schneider. The record will not support a finding that the trial court was manifestly erroneous in its implicit finding that the $770.00 claimed by Touro had not been paid by MMU.
For the foregoing reasons the judgment of the trial court is amended to reduce the award to Touro to $16,675.14 ($15,905.14 + $770.00) from $20,000.00, and as amended, *94 affirmed.[4]
AFFIRMED AS AMENDED.
JONES, J., dissents with reasons.
JONES, Judge, dissenting.
If this was an appeal of a default judgment, I might be inclined to agree with my colleagues that the trial court committed no error in ruling on behalf of Touro. However, this was a contested matter. Touro presented no competent evidence to support a finding that MMU agreed to be a guarantor on behalf of these seamen. Additionally, except for certain specific instances, the record supports a finding that generally speaking MMU mainly acted as a referral source for Touro.
MMU is a medical clinic that treats seamen whose ships come to New Orleans. For services beyond its capability, MMU refers injured seamen to area hospitals such as Touro. The medical bills at issue arose from both in-patient and out-patient treatment of fourteen foreign seamen referred to Touro by MMU.
Ms. Spencer's testimony concerning the existence of an arrangement between Touro and MMU was nothing more than garden variety hearsay as Ms. Spencer candidly admitted she was told about this arrangement by Helen Ruiz, the director of the Industrial Medical Department at Touro. Ms. Ruiz did not testify at the trial. Moreover, according to Ms. Spencer, Helen Ruiz told her she was not part of the staff of the department at the time the contract was made, but she understood MMU to be the guarantor for all of its referrals to Touro. Clearly then, Ms. Ruiz had no first hand knowledge of any agreement between MMU and Touro, and certainly Ms. Ruiz was not a party to any such agreement. Consequently, Ms. Ruiz would not have been competent to testify concerning any alleged agreement for MMU to be a guarantor. Ms. Spencer further admitted she had no record of MMU personnel signing consent to treatment forms or admission slips for the patients referred. The mere fact that Touro sent billing statements to MMU and MMU never requested that Touro send the bills elsewhere is not sufficient to establish that MMU was the guarantor of these bills.
Joseph Smith, president of MMU, testified he never made a specific agreement with any Touro administrator regarding patients MMU refers. According to Mr. Smith, an employee from MMU merely called Touro to let the hospital personnel know a patient was coming to the hospital, but MMU did not provide transportation or accompany the patients while they were being admitted. Instead, Mr. Smith testified, patients travelled by taxi and many patients were accompanied by their own interpreters, who were not affiliated with MMU. Mr. Smith testified MMU received the billing statements merely as an agent for the seamen's employers. Mr. Smith further testified that MMU treated in-patient and out-patient cases differently. According to Mr. Smith's testimony, MMU paid deposits for out-patient bills in advance and then sought reimbursement from the employer. Mr. Smith testified if the fee for services turns out to be less than the deposit MMU pre-paid, Touro gave MMU a credit. However, if the fee turned out to be more than the pre-paid deposit, MMU paid the overage amount and billed the employer. In the case of in-patient bills, Mr. Smith testified MMU merely acted as an agent and offered its address to the hospitals because, at the time of referral, MMU often did not yet know the address of the responsible ship owner. Mr. Smith testified MMU does not pay Touro for any in-patient cases, but instead asks the responsible employer to pay Touro directly. Mr. Smith further testified MMU orally notified Touro of its request to the employer to pay Touro directly and provided Touro with the address to send a bill to that employer. Ms. Spencer admitted in her testimony that in some cases Touro has in fact received payment directly from the patient's employer.
Touro offered no competent evidence to support a finding that MMU was the primarily responsible party for the medical bills of *95 the patients referred by MMU. Consequently, the trial court committed manifest error by concluding a business arrangement existed between the parties when Touro failed to prove the existence of the arrangement by competent evidence. Proof of an oral contract in excess of five hundred dollars requires at least one witness and other corroborating evidence. La.Civ.Code Art. 1846 (West 1996); Bordlee v. Pat's Const. Co., Inc., 316 So.2d 16 (La.App. 4th Cir.1975). A plaintiff may be the one witness needed to prove the existence of an oral contract. Samuels v. Firestone Tire & Rubber Co., 342 So.2d 661 (La.1977). In the instant case Touro did not present any witness with firsthand knowledge of the alleged agreement.
The issue of whether Ms. Spencer was a credible witness is really irrelevant. The trial judge could very well have believed her, yet she simply had no relevant testimony to offer concerning the contract because she was not present when the alleged contract was purportedly made. Indeed, Ms. Ruiz, the person from whom Ms. Spencer gained her understanding of the alleged contract was not even present when the alleged contract was purportedly made. So the most the trial court could have found, based on Ms. Spencer's testimony, was that Ms. Spencer honestly believed an agreement existed between Touro and MMU for MMU to be a guarantor of the seamen's bills. Unfortunately, no matter how deeply felt this belief may have been, the trial court could not find such an agreement actually existed merely because of Ms. Spencer's belief. By accepting Ms. Spencer's belief as a basis for finding an agreement the trial court implicitly found Ms. Ruiz to also be a credible witness. How the court could have reached this conclusion when Ms. Ruiz did not testify puzzles this writer, particularly since Ms. Spencer's testimony clearly confirms Ms. Ruiz could not possibly have been present at the time the purported agreement was made.
Touro's corroborating evidence was also insufficient. Touro introduced medical records created during the admission process which list MMU as the guarantor. However, Touro did not introduce competent evidence that MMU was involved in the admission process of any of the patients MMU referred. Ms. Spencer testified she believed MMU was responsible for sending the interpreters who often came to the hospital with the patients, but she candidly admitted her job did not involve handling any aspects of the admission process. Moreover, Mr. Smith, MMU's president testified the interpreters had no relationship with MMU. The medical records may prove Touro listed MMU as a guarantor, but Touro produced no competent evidence MMU participated in the creation of the medical records or otherwise indicated they were willing to be listed as a guarantor.
Although Touro did not prove MMU was primarily liable for the bills of the patients it referred, Mr. Smith admitted in his testimony MMU owes Touro for payments it received from the employers of four different patients: $1,003 for Athanasios Tsinas; $87.92 for Chung Nin Wong; $62.50 for Danilo Martinez; and $102 for Facelt Klausa total of $1,255.42. Therefore, I would have amended the award of the trial court to reflect this admission.
In all other respects, I would reverse the judgment of the trial court.
NOTES
[1] Touro agreed to limit its claim to the jurisdictional limit of the First City Court.
[2] In the absence of reasons for judgment, we infer from the result below that the trial found Ms. Spencer's testimony to be credible. We cannot say that such a determination was manifestly erroneous.
[3] The party pleading an affirmative defense bears the burden of proving such a defense, and the defense must be established by a preponderance of the evidence. Crescent Cigarette Vending Corp. v. Toca, 271 So.2d 53 (La.App. 4th Cir.1972).
[4] We make no ruling on the validity of the $5,758.01 bill. We rule only that it was not properly before the court in this proceeding.