| 241 HOLDINGS, LLC | * | NO. 2021-CA-0011 |
|---|---|---|
| VERSUS | * | |
| | | COURT OF APPEAL |
| 241 ENTERPRISES, LLC | * | |
| | | FOURTH CIRCUIT |
| | * | |
| | | STATE OF LOUISIANA |

\* \* \* \* \* \* \*

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2020-06554, DIVISION "M"
Honorable Paulette R. Irons, Judge
\* \* \* \* \* \*
**Judge Joy Cossich Lobrano**
\* \* \* \* \* \*
(Court composed of Judge Joy Cossich Lobrano, Judge Regina Bartholomew-Woods, Judge Paula A. Brown)

Thomas M. Beh
Michael L. Mancuso
ELKINS, P.L.C.
201 St. Charles Avenue, Suite 4400
New Orleans, LA 70170

    COUNSEL FOR PLAINTIFF/APPELLANT

Timothy R. Richardson
Richardson Law Group
P.O. Box 310
Madisonville, LA 70447

Leonard L. Levenson
Christian W. Helmke
Colleen Boyle Gannon
LEONARD L. LEVENSON & ASSOCIATES
650 Poydras Street, Suite 2750
New Orleans, LA 70130

    COUNSEL FOR DEFENDANT/APPELLEE

**REVERSED**

**DECEMBER 15, 2021**

This is a commercial eviction case. Plaintiff/appellant, 241 Holdings, LLC ("Lessor"), appeals the September 30, 2020 judgment of the district court, which denied Lessor's rule for eviction against defendant/appellee, 241 Enterprises, LLC ("Lessee"). For the reasons that follow, we reverse the judgment.

The premises at issue is a commercial property on Bourbon Street in New Orleans (the "Premises"), which operated a bar. On January 5, 2010, Lessor and Lessee entered into a Triple Net Lease (the "Lease") of the Premises for a term of twenty (20) years, wherein during the period in dispute, Lessee would pay to Lessor rent of $35,700.00 per month along with certain costs of property taxes and insurance.

Article XXVIII of the Lease provides that the Lessee shall be in breach of the Lease if:

> (1) Lessee fails to pay Lessor Rent or any other amount due by Lessee under this Lease, and Lessee continues to fail to do so for ten (10) calendar days after written notice of said default…

1

Article XXVIII also sets forth Lessor's remedies, in the event of Lessee's breach of the Lease, including Lessor's right to:

> (a) Cancel this Lease, effective immediately as of any date Lessor may select, without, however, waiving Lessor's right to collect all installments of Rent, Advances, and all other amounts due and owing for the period up to the time Lessor regains occupancy of the Leased Premises…[1]

It is undisputed that, following the onset of the COVID-19 pandemic, Lessee did not pay Lessor the full amount of the rent for the months of April, May, June, July, August, and September 2020. Lessee attempted to tender a partial payment in June 2020, which Lessor refused to accept. Pursuant to the Lease, Lessor provided notices of default to Lessee dated June 9, 2020, June 26, 2020, and July 8, 2020.

On August 5, 2020, Lessor filed a Petition for Eviction and for Damages for Breach of Lease, alleging it was entitled to possession of the Premises, past due rent, interest, late fees, liquidated damages, attorney's fees, costs, and other amounts due under the Lease. On September 1, 2020, Lessee filed dilatory exceptions of improper cumulation of actions and unauthorized use of a summary proceeding, seeking separate trials for the rule for eviction and an ordinary

---

[1] The other remedies set forth in Article XXVIII include Lessor's right to:

> (b) Declare all Rent for the whole unexpired term of this Lease to at once become immediately due and payable, and thus at once demand and sue for the entire Rent for the whole unexpired Term of this Lease;

> (c) Proceed one or more times for past due installments of Rent or outstanding Advances without prejudicing its right to proceed later for remaining installments of Rent and/or outstanding Advances or to exercise any other remedy; and/or

> (d) Have recourse to any other remedy to which Lessor may be entitled by law, with Lessee to remain responsible for any and all damages or losses suffered by Lessor.

proceeding on Lessor's claim for damages. On the same date, Lessee filed an answer with affirmative defenses and reconventional demand, alleging, in pertinent part, Lessee's inability to pay rent due to lack of income from a pandemic-related business interruption. Lessee also claimed that Lessor breached the Lease by failing to obtain insurance, which would have covered the loss of rent and provided Lessee a credit toward its rental obligations from such insurance proceeds. Lessee argued that Lessor was liable for damages and attorney's fees for wrongful termination of the Lease.

The disputed portion of the Lease reads as follows:

ARTICLE XI.
LESSOR'S PROPERTY INSURANCE

Throughout the Term, **Lessor will maintain (i) fire, flood and special extended coverage ("all risk") insurance on the buildings and improvements on the Leased Premises but not more coverage than** the cost of replacement of the building and contents and **loss or [sic] Rentals for one year** unless agreed to by Lessee, and (ii) liability (the premiums for the insurance described in (i) and (ii) are, collectively, "Lessor's Insurance Premiums.["] For the year in which this Lease commences and the year in which it terminates, Lessor's Insurance Premiums will be prorated according to the length of time that this Lease is in effect for that year. **Lessor shall arrange for said insurance to be financed and provide Lessee with the amount due each finance period which shall be paid by Lessee.** Lessee shall have the benefit and be named as an additional insured on all insurance providing coverage for Lessee's property or improvements. **To the extent that business interruption insurance coverage is purchased, Lessee shall be entitled to a reduction of Rent for the amount of insurance received by Lessor under any such provision.** Lessee is permitted to utilize the insurance currently procured or to be procured by Lessor and pay Lessor's Insurance Premiums in installments. … Notwithstanding anything herein to the contrary, upon written notice by Lessee to Lessor, Lessee shall maintain and pay the Insurance from a carrier of its choosing required herein and shall give Lessor the same notices and certificates of insurance as required in Article X above.

3

(Emphasis added).

The parties do not contest that Lessor procured fire, flood, and special extended coverage. For the period in dispute, Lessor obtained and was issued a commercial property insurance policy (the "Policy") listing Lessor as a named insured. Pursuant to the Lease, Lessor passed along the cost of the property insurance to Lessee. Lessor represents that, in the wake of the COVID-19 pandemic, it made a claim for business interruption under this Policy, which the insurer denied under a "microorganism exclusion."

On September 10, 2020, the district court held a hearing at which it granted Lessee's exceptions and ordered a separate trial of the claims for damages. Thus, on September 10, 2020, the hearing proceeded on the rule for eviction only. The district court denied the eviction from the bench and gave oral reasons, finding that the Lease required Lessor to maintain "all risk"[2] insurance on the premises; the district court found the term "all risk" rendered the Lease ambiguous such that the Lease must be construed against Lessor as its drafter.[3] Thus, the district court reasoned, Lessor was required to purchase insurance that would have covered loss

---

[2] Louisiana cases define an "all risk" property insurance policy as "one where all risks are covered unless clearly and specifically excluded." *Widder v. Louisiana Citizens Prop. Ins. Corp.*, 11-0196, p. 4 (La. App. 4 Cir. 8/10/11), 82 So.3d 294, 296 (citing *Morgan v. Auto Club Family Ins. Co.*, 04-1562, p. 4 (La. App. 3 Cir. 4/6/05), 899 So.2d 135, 137; *Dawson Farms, L.L.C. v. Millers Mut. Fire Ins. Co.*, 34,801, p. 3 (La. App. 2 Cir. 8/1/01), 794 So.2d 949, 951). The Louisiana Civil Law Treatise also refers to the all risk property insurance policy as a "comprehensive form" "in which there is a general statement of coverage, followed by specific exclusions of various kinds of property damage." William Shelby McKenzie & H. Alston Johnson, III, *Insurance Law & Practice*, § 10:10, 15 La. Civ. L. Treatise (4th ed.). In contrast, another type of property insurance policy – a "broad form" or "named risk" policy – provides a specific outline or list of the coverages provided, "one after the other." *Id.*

[3] "In case of doubt that cannot be otherwise resolved, a provision in a contract must be interpreted against the party who furnished its text." La. C.C. 2056; *see Pollard v. Schiff*, 13-1682, p. 10 (La. App. 4 Cir. 2/4/15), 161 So.3d 48, 55 (holding that, under Louisiana law, ambiguous clauses are construed against the drafter).

4

of rent due to business interruption stemming from the COVID-19 pandemic. Thus, according to the district court, Lessor breached its duty to purchase "all risk" insurance coverage. On September 30, 2020, the district court rendered judgment denying the rule for eviction. This appeal followed.[4]

Generally, an appellate court reviews the factual findings of a lower court in an eviction matter under the manifest error standard of review. *Armstrong Airport Concessions v. K-Squared Rest., LLC*, 15-0375, p. 9 (La. App. 4 Cir. 10/28/15), 178 So.3d 1094, 1100 (citations omitted). "Where legal errors of the trial court have tainted the fact finding process, the verdict below is not reviewed under the manifest error standard and, if the record is complete, the appellate court may make a *de novo* review of the record and determine the preponderance of the evidence." *Hous. Auth. of New Orleans v. King*, 12-1372, p. 5 (La. App. 4 Cir. 6/12/13), 119 So.3d 839, 842.

Additionally, a legal question of contractual interpretation, presented in an eviction case, is subject to *de novo* review on appeal. *Armstrong*, 15-0375, p. 9, 178 So.3d at 1101. Further, when "there is no dispute as to the dispositive facts, the

---

[4] On appeal, Lessor raises the following assignments of error:

1. The Trial Court erred as a matter of law in interpreting the subject lease as requiring Lessor to provide business interruption coverage for business impacts from the COVID-19 global pandemic.

2. The Trial Court erred as a matter of law in its interpretation of the applicable policy of insurance which complied with the requirements of the applicable lease.

3. The Trial Court erred as a matter of law in denying the requested eviction when the undisputed evidence presented at the eviction hearing was that Lessee had failed to pay rent as required by the applicable lease.

issue can be decided as a matter of law and the review is *de novo*." *Id.*, 15-0375, pp. 9-10, 178 So.3d at 1101 (internal quotation omitted). Moreover, "[t]he issue of whether or not the language of a contract is ambiguous is an issue of law subject to *de novo* review on appeal." *French Quarter Realty v. Gambel*, 05-0933, p. 3 (La. App. 4 Cir. 12/28/05), 921 So.2d 1025, 1027 (quotation omitted).

In an eviction proceeding, the lessor has the burden of proving, by a preponderance of the evidence, a valid lease and that the violation of the lease provides sufficient grounds for an eviction. *Guste Homes Resident Mgmt. Corp. v. Thomas*, 12-1493, p. 5 (La. App. 4 Cir. 5/29/13), 116 So.3d 987, 990. "Under La. C.C. art. 2704, if the lessee fails to pay rent when due, the lessor may dissolve the lease and regain possession of the premises." *Nuccio Fam., LLC v. Cooties Corp.*, 20-0659, p. 7 (La. App. 4 Cir. 5/12/21), 319 So.3d 926, 931.[5] Lessee did not raise any procedural insufficiency of the eviction proceeding or dispute Lessee's nonpayment of the full amount specified in the Lease. Rather, Lessee sought to defeat cancellation of the Lease by raising Lessor's purported breach of the Lease as an affirmative defense.

---

[5] "When a lessee's right of occupancy has ceased because of … nonpayment of rent, … and the lessor wishes to obtain possession of the premises, the lessor or his agent shall cause written notice to vacate the premises to be delivered to the lessee." La. C.C.P. art. 4701. "A lessee may waive the notice requirements of this Article by written waiver contained in the lease, in which case, upon termination of the lessee's right of occupancy for any reason, the lessor or his agent may immediately institute eviction proceedings in accordance with Chapter 2 of Title XI of the Louisiana Code of Civil Procedure." *Id.* "[I]f the lessee has waived his right to notice to vacate by written waiver contained in the lease, and has lost his right of occupancy for any reason, the lessor or owner, or agent thereof, may cause the lessee or occupant to be cited summarily by a court of competent jurisdiction to show cause why he should not be ordered to deliver possession of the premises to the lessor or owner." La. C.C.P. art. 4731(A).

6

An affirmative defense is a defense that raises a new matter, which assuming the allegations in the petition are true, will have the effect of defeating a plaintiff's demand on its merits. *Fin & Feather, LLC v. Plaquemines Par. Gov't*, 16-0256, pp. 6-7 (La. App. 4 Cir. 9/28/16), 202 So.3d 1028, 1033 (quotations omitted); *see also Rourke v. Cloud*, 398 So.2d 57, 59 (La. App. 3d Cir. 1981)(citing La. C.C.P. art. 1005)(explaining, for example, that a defendant's right to enforce a contract to sell was not an affirmative defense to eviction because the contract did not give defendant a right to possess the property). Affirmative defenses to eviction are provided in La. C.C.P. art. 4735. This article permits a suspensive appeal to a defendant who pleads an affirmative defense entitling him to retain possession of the premises (and otherwise meets the applicable procedural requirements for suspensive appeal).

A lessee pleading an affirmative defense to eviction "bears the burden of proof on that defense, which must be established by a preponderance of the evidence." *Guste Homes Resident Mgmt. Corp. v. Thomas*, 20-0110, p. 14 (La. App. 4 Cir. 7/29/20), 302 So.3d 1181, 1190 (citing *Jeanmarie v. Peoples*, 09-1059, p. 6 (La. App. 4 Cir. 3/16/10), 34 So.3d 945, 950; *Touro Infirmary v. Marine Med. Unit, Inc.*, 96-2506, p. 7, n. 3 (La. App. 4 Cir. 5/21/97), 699 So.2d 90, 93). According to Lessee's argument, Lessor failed to procure the insurance the Lease required. Stated another way, Lessee contends that it would have been able to fulfill its rental obligations had Lessor maintained insurance, which would have provided coverage for pandemic-related loss of rent. The district court reached a

similar conclusion. In its oral reasons, the district court premised its denial of the eviction on its finding that the Lease's requirement for "all risk" insurance was ambiguous, and construing that provision against Lessor, it found that the Lessor was required to but failed to obtain said insurance.[6]

We find that the district court erred as a matter of law in finding that Lessee's breach of lease claim defeated Lessor's claim for possession of the Premises. Lessee's breach of lease claim herein, even if true, is not an affirmative defense to the summary eviction proceeding, which would entitle Lessee to maintain possession of the Premises. Neither the law nor the Lease affords Lessee such a remedy. Nothing in the Code of Civil Procedure specifies that a lessor's breach of lease negates lessor's claim for possession based on unpaid rent. Likewise, no provision of the Lease grants rent-free possession of the subject Premises as a remedy to Lessee for Lessor's breach of the Lease.[7] Rather, the

---

[6] "Our jurisprudence is well-settled that an appeal is taken from a final judgment and not the district court's reasons for judgment; however, an appellate court may consider the reasons for judgment in determining whether the district court committed legal error." *Roy Anderson Corp. v. 225 Baronne Complex, L.L.C.*, 17-1005, p. 6 (La. App. 4 Cir. 7/11/18), 251 So.3d 493, 499 (citing *Winfield v. Dih*, 01-1357, p. 8 (La. App. 4 Cir. 4/24/02), 816 So.2d 942, 948).

[7] "A contract constitutes the law between the parties." *Armstrong*, 15-0375, p. 10, 178 So.3d at 1101 (citing La. C.C. art. 1983). "Interpretation of a contract is the determination of the common intent of the parties." La. C.C. art. 2045. "Words of art and technical terms must be given their technical meaning when the contract involves technical matter and words susceptible of different meanings are to be interpreted as having a meaning that best conforms to the object of the contract." *Rogers v. Integrated Expl. & Prod., LLC*, 18-0425, p. 13 (La. App. 4 Cir. 2/20/19), 265 So.3d 880, 889 (quotation omitted). "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." La. C.C. art. 2046. When the language of the contract is unambiguous, the letter of the clause should not be disregarded under the pretext of pursuing its spirit. La. C.C. art. 2046, comment (b). "The meaning and intent of the parties to a written instrument is ordinarily determined from the four corners of the instrument, and extrinsic (parol) evidence is inadmissible either to explain or to contradict the terms thereof." *Gambel*, 05-0933, p. 7, 921 So.2d at 1029-30 (citing *Ortego v. State, Dept. of Transp. & Dev.*, 96-1322, p. 7 (La. 2/25/97), 689 So.2d 1358, 1363). "Contracts, subject to interpretation from the instrument's four corners without the necessity of extrinsic evidence, are to be interpreted as a matter of law, and the use of extrinsic evidence is proper only where a contract is ambiguous after examination of the four corners of

Lease permits Lessee particular remedies of: a reduction of rent to the extent that Lessor receives any business interruption insurance proceeds;[8] and attorney's fees and costs that Lessee incurs in enforcing a claim under the Lease.[9] Neither of these remedies are pertinent, however, in a rule for eviction, and the district court erroneously conflated Lessee's breach of contract claims with the rule for eviction.[10]

"Eviction procedure of the Code of Civil Procedure is designed to expedite as quickly as possible determination of right of lessor to be restored to possession of premises." *Abrimson v. Ethel Kidd Real Est.*, 04-2085, pp. 3-4 (La. App. 4 Cir. 1/18/06), 926 So.2d 568, 570 (citation omitted). An eviction proceeding serves a limited function, and Louisiana courts have "pointed out that an action for eviction is a summary proceeding which only results in recovery of the leased premises."

---

the agreement." *Id.*, 05-0933, p. 7, 921 So.2d at 1030 (citing *Richard A. Tonry, P.L.C. ex rel. Tonry v. Constitution State Service, L.L.C.*, 02-0536, p. 3 (La. App. 4 Cir. 7/17/02), 822 So.2d 879, 881). While the parties dispute whether the Lease's "all risk" property insurance clause is ambiguous, no party argues that the remedies provided under the Lease are ambiguous.

[8] Article XI of the Lease provides, in relevant part: "To the extent that business interruption insurance coverage is purchased, Lessee shall be entitled to a reduction of Rent for the amount of insurance received by Lessor under any such provision…."

[9] Article XXVIII(E) of the Lease provides, in part:

> … if an agent or attorney is employed by Lessee to give special attention to the enforcement or protection of any claim of Lessee arising from this Lease, Lessor agrees to pay to Lessee, in addition to all other sums due by Lessor to Lessee, Lessee's attorneys' fees, together with any and all other costs, charges and expenses paid or incurred by Lessee in connection with the enforcement or protection of any claim of Lessee arising from this Lease.

[10] We acknowledge that "fault of the plaintiff" is an enumerated affirmative defense under La. C.C.P. art. 1005, and considering the unique facts of this claim, Lessee's arguments could be construed as a defense of Lessor fault. However, no evidence was presented that Lessor caused Lessee's nonpayment of rent or prevented Lessee from paying rent. Instead, Lessor received no insurance proceeds, and Lessee's rent was not reduced under the Lease. The district court erred to the extent it found Lessor fault in this respect.

*Lifemark Hosp. of Louisiana, Inc. v. Gulf S. Med. & Surgical Inst., Inc.*, 03-1122, p. 3 (La. App. 5 Cir. 1/27/04), 865 So.2d 903, 905 (citing *Friedman v. Hofchar, Inc.*, 424 So.2d 496, 499 (La. App. 5th Cir. 1982)). "The rule to show cause in an eviction proceeding is to determine whether or not possession of the property should be delivered to the lessor, not to determine reconventional demand claims." *Graci v. Gasper John Palazzo, Jr., L.L.C.*, 09-0347, p. 6 (La. App. 5 Cir. 12/29/09), 30 So.3d 915, 918. "The adjudication of these claims and any other relief are determined via an ordinary proceeding." *Id.* (citations omitted).

To the extent that Lessee seeks to prevail on its own claims for damages, the reconventional demand remains pending and nothing in this opinion prevents Lessee from proceeding with that demand.

Thus, the district court erred in finding that Lessee proved an affirmative defense entitling it to retain possession of the premises. Consequently, on our *de novo* review, we find that Lessor established that it is entitled to a summary eviction. The validity of the Lease is uncontested, and the evidence that rent was unpaid is unrefuted. Thus, the district court erred in denying Lessor's rule for eviction; therefore, it is reversed.

Accordingly, for the foregoing reasons, the district court's judgment denying the rule for eviction is reversed.

**REVERSED**