BOUTALL, Judge.
This is a tort suit brought by the parents of a minor who was injured when shot by a property owner. From a jury verdict in favor of the defendant property owner, the plaintiffs appeal.
The defendant, Pansy Boudreaux, owned and lived alone in a residence on Saddler Road in Marrero. In the back of the property was a two story building containing three apartments which Ms. Boudreaux rented out. A sidewalk to the apartments ran between Ms. Boudreaux’s house and the next property. Early in the morning of December 12, 1981, the plaintiff, Frank Roberts, then fifteen years old, walked onto Ms. Boudreaux’s premises with a friend. The next door neighbor, a Mrs. Bourg, telephoned Ms. Boudreaux to say that two boys had entered the downstairs apartment and one of them had unscrewed the flood light bulb which illuminated that area. Ms. Boudreaux went out the back door of her home to cheek and accosted the two youths. During this encounter, she shot Roberts.
Roberts’ parents filed suit against Bou-dreaux, who denied liability and third-partied State Farm Insurance Company as her homeowner’s insurer and also as liability carrier for the apartment complex. After State Farm was dismissed on exceptions of no cause of action, the plaintiffs amended their petition to add State Farm as a defendant. The case was tried to a jury which found that Pansy Boudreaux was justified under the circumstances in shoot *168 ing Frank Roberts. This appeal followed. We affirm.
The sole issue before this court is whether the jury correctly found that the shooting was justified. A person may not recover damages for a battery when he has provoked the situation in which he is injured, unless the individual responding uses greater force than is reasonably necessary to repel the attack. Levesque v. Saba, 402 So.2d 266 (La.App. 4th Cir.1981). Neville v. Johnson, 398 So.2d 111 (La.App. 3rd Cir.1981).
In the recent case of Bray v. Isbell, 458 So.2d 594 (La.App. 3rd Cir.1984), writ denied 462 So.2d 210 (La.1985), which involved the shooting of an intruder by a motel owner, the court said, at 596:
“Resort to dangerous weapons to repel an attack may be justifiable in eases when the fear of personal danger is genuine and founded on facts likely to produce similar emotions in reasonable men. Neville, supra; Levesque, supra; McCullough v. McAnelly, 248 So.2d 7 (La.App. 1st Cir.1971). It is only necessary that a person have grounds which lead a reasonable man to believe force is necessary, and that he actually so believes. Although all facts and circumstances must be taken into account to determine the reasonableness of his belief, detached reflection or a pause for consideration cannot be demanded under circumstances which require split second decisions. Levesque, supra.”
See also Bond v. Toriello, 260 So.2d 727 (La.App. 4th Cir.1972), writ denied 262 La.189, 262 So.2d 788 (1972).
In determining whether the circumstances justified the use of deadly force the court should consider the character and reputation of the attacker, his belligerence, the difference in size and strength between the parties, an overt act or threats of bodily harm by the attacker, and the possibility of a peaceful retreat. Levesque v. Saba, supra.
The issue before us is obviously a question of fact and credibility of witnesses. We note that the jury verdict after a two-day trial was unanimous.
Frank Roberts and his mother, Bernice Roberts, both testified. Frank denied having entered the downstairs apartment or removing any property from it or unscrewing the light bulb. His reason for going on Ms. Boudreaux’s property was to see a tenant in one of the upstairs apartments, “Kevin,” who had promised to take him and Mike Mistich fishing. Frank testified that he and Mike made two attempts to find Kevin, at 12:00 and again around 2:30 a.m. They were to go to a pier, about five minutes away from the apartment, but had to get the gear together. Mrs. Roberts testified that she knew Frank was going fishing with Kevin and that Frank had fished with him before. Frank said that Kevin was to furnish the fishing poles and ice chest. When asked why they had to meet such a long time ahead he responded that the boys planned to sit around and talk with Kevin till time to go fishing. Frank first said that he did not see Kevin at all that night but said later that he saw him at a restaurant where he and Mike had gone in between the two trips to the apartment. Frank did not know Kevin’s last name, although he said he had visited him many times before, and did not know his current whereabouts.
As to the encounter with Ms. Boudreaux, Frank testified that he and Mike had come back down the apartment steps and were at the foot of the steps, walking away, when Ms. Boudreaux came up behind them and told them to put their hands up. They put their hands up, said nothing, started running, and then Frank was shot. They continued to run and he looked back and saw Ms. Boudreaux running after them.
Ms. Boudreaux testified that Kevin Barnes and his wife were supposed to move out of the upstairs apartment the night of the shooting. When Mrs. Bourg called Ms. Boudreaux and told her two boys were moving things from the downstairs apartment, she first believed it was the Barnes’s moving. Deciding to check, she dressed, started out the back door, *169 then on impulse went back in and got her pistol, which she put in her pocket. She walked to the back, saw that one of the light bulbs in a floodlight at the edge of the building was dark, and heard stumbling around in the downstairs apartment. When the light inside the apartment went out she ran to the side of the building to wait. The two boys walked out of the apartment. She walked up to them and asked them what they were doing. The boys said nothing in response but raised their hands up to their waists. She did not remember exactly what happened at that point but did remember that they started running, then turned and came back toward her. She pointed the gun and shot three times. She could not describe Frank’s exact position when the gun went off, whether facing her or partly turned. She reported being afraid when she accosted the boys and then fearing for her life when they turned and moved toward her. There was no way for her to get away from them without going past them, and there was no one around to help her.
The next door neighbor, Mrs. Bourg, testified that she heard her dogs barking “extra loud” at around midnight, looked outside and saw two boys come down the steps. The taller of the two reached up and unscrewed the light bulb that shone on the lower apartment. They went in the lower apartment, turned on the light, then left with bundles in their arms. She had never seen either boy in the neighborhood before. She was sure the downstairs tenant was not home as her car was not in front of the house. Apparently because her husband objected, she did not call the police or Ms. Boudreaux, but when she heard the dogs again about an hour later and saw the boys re-entering the downstairs apartment, she called Ms. Bou-dreaux. She watched her walk to the back and look at the light. When the boys came out of the apartment running, Ms. Bou-dreaux told them to stop. They stopped, yelled something, then turned around and went a few steps toward her. She shot and the boys started running again. She followed and when she reached the front of the house she yelled to Mrs. Bourg to call the police. She was crying and scared.
We find the testimony of Frank Roberts and his mother regarding the fishing trip to be implausible and incredible. As Mike Mistich still lived in the area but was not called by the plaintiff, we assume that his testimony would be detrimental. Kevin Barnes, whose testimony might have corroborated Frank’s story, was not called, but he may have been unavailable. Additionally, both Roberts and his mother testified he was only 5 feet 7 to 9 inches and weighed 115 to 120 pounds. Yet the admit records of Charity Hospital after the shooting gave his height as 6 feet 1 inch tall and weight as 160 pounds.
Frank Roberts’ account of the shooting and that of Ms. Boudreaux and Mrs. Bourg are clearly in conflict as to whether there was an overt act on the part of the plaintiff by turning and moving toward her. Again, we may assume that Mike Mistich’s testimony would be detrimental to the plaintiff’s case. Despite this conflict, the undisputed facts brought out at trial form a reasonable basis for a finding that Ms. Boudreaux believed herself to be in a position of grave danger. The presence of two male intruders, one of whom was six feet one inch tall, the lack of any explanation of their presence by the boys, the impossibility of a retreat without moving past the intruders, the information given her by her neighbor, and having no one nearby to come to her aid, all are factors supporting a finding of fear sufficient to lead Ms. Boudreaux to use her gun. The jury chose to believe Ms. Boudreaux’s account of the shooting and so do we.
Where there is a reasonable basis for a finding of fact of the trial court, that finding should not be disturbed in the absence of manifest error. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
Accordingly, for the reasons stated above, the judgment appealed from is affirmed.
AFFIRMED.