PATRICIA RIVET MURRAY, Judge.
kThis is a tort suit arising out of an off-duty deputy, who was working a private detail for a parking lot owner, shooting and injuring an armed parking lot patron. *645 The narrow issue presented is whether the trial court correctly concluded that the deputy, Taraunce Charles Martin, acted in self-defense and thus that the deputy’s private employer, Central Parking System of Louisiana, Inc., could not be vicariously liable to the injured patron, Kyle Aaron Brown. Finding no error in the trial court’s conclusion, we affirm the granting of Central Parking’s motion for summary judgment and dismissing Mr. Brown’s suit against it.
FACTUAL AND PROCEDURAL BACKGROUND
On the night of January 26, 2008, Kyle Brown and two female friends went out partying in the New Orleans French Quarter. At about 4:00 a.m. on January 27, 2008, the trio returned to Mr. Brown’s car, which was parked in Central Parking’s lot located on Conti Street. When they reached the Conti Street lot, Mr. Brown became embroiled in a dispute with the occupants of a red truck. The driver of the red truck began to drive in circles around the trio, and the occupants in the truck began taunting and shouting at Mr. Brown. The trio continued walking towards Mr. Brown’s car. When they reached the car, Mr. |2Brown armed himself with a handgun, which he removed from under the driver’s seat. Despite the cold January weather, Mr. Brown took off his shirt. The two females got into the car, and Mr. Brown proceeded towards the red truck.
Meanwhile, the cashier and some customers in the parking lot alerted Deputy Martin that a man (later identified as Mr. Brown) was running around the lot with a gun and screaming and shouting at people. Deputy Martin, who was on foot, requested his partner, Walter Wilson, who was stationed in his vehicle, provide him with backup assistance. At that time, both Deputy Martin and Deputy Wilson were working a private detail for Central Parking.[1] Deputy Martin then went to investigate the disturbance.
When Deputy Martin approached Mr. Brown in the parking lot, Mr. Brown was having words with the occupants of the red truck. Deputy Martin neither detained nor questioned the occupants of the red truck. Nor did he inform Mr. Brown that he was a law enforcement officer. Deputy Martin unsuccessfully attempted to calm down Mr. Brown, who was agitated. Deputy Martin instructed Mr. Brown, who appeared to be intoxicated, to get into his car and to leave the parking lot. In order to attempt to get Mr. Brown to leave, Deputy Martin told him “Go home. You been drinking. Go chill out and go home.” Deputy Martin also warned him that he was going to have to arrest him. Mr. Brown then drew his | ?,weapon, pointed it at the ground, and shouted several racial expletives.[2] Deputy Martin then drew his *646 gun and commanded several times, each time more forcefully, that Mr. Brown drop the gun. Mr. Brown ignored the commands. Instead, Mr. Brown pointed the gun at Deputy Martin and threatened to kill him, stating, “Well, f ... it, I’ll kill you.” In response to the threat, Deputy Martin fired several shots at Mr. Brown. It is undisputed that Deputy Martin fired nine shots and that Mr. Brown was hit between five and seven times. Although both Deputy Martin and his partner, Deputy Wilson, believed that Mr. Brown had fired a shot, it is undisputed that Mr. Brown did not fire any shots.
Mr. Brown was criminally charged with and convicted of aggravated battery of a peace officer with a firearm, a violation of La. R.S. 14:37.2. This court affirmed the conviction. State v. Brown, 09-0863 (La.App. 4 Cir. 12/2/09), 26 So.3d 845.
On January 29, 2009, Mr. Brown commenced this tort suit against Mr. Martin and both his alleged private employer, Central Parking, and his public employer, the Orleans Parish Criminal Sheriff, Marlin N. Gusman. Mr. Brown alleged that Deputy Martin was Central Parking’s employee at the time of the shooting and that Central Parking thus was vicariously responsible for his actions.
After answering the suit and generally denying the allegations of the petition, Central Parking filed a motion for summary judgment. In support of its motion for summary judgment, Central Parking introduced the entire transcript Mr. Brown’s January 27, 2009, criminal trial. The State’s three witnesses at the criminal trial were Deputy Martin; Deputy Wilson, who was Deputy Martin’s |4partner; and Derika Gibson, an off-duty deputy who witnessed the shooting from a vehicle parked near the parking lot entrance. The defense’s two witnesses were Alexandra Biggs, one of the females who accompanied Mr. Brown to the French Quarter; and Sergeant Randy Mannix, who served in the army with Mr. Brown and trained him in gun safety.[3] The facts of this case, as presented at the criminal trial, are outlined in detail in this court’s opinion in Brown, supra. Summarizing, the pertinent facts are as follows:
The deputies’ [Deputy Martin’s and Deputy Wilson’s] testimony reflects that customers reported to the cashier that the defendant [Mr. Brown] was belligerent, hostile, and appeared to have been drinking, and he was running around the parking lot with a gun. Deputy Martin approached the defendant [Mr. Brown], and the defendant [Mr. Brown] pulled a gun from his waistband. Deputy Martin took cover behind a parked vehicle and Deputy Wilson provided backup. The testimony of the deputies as well as that of an observing, off-duty deputy [Deputy Gibson] reflects that the defendant [Mr. Brown] pointed the gun at Deputy Martin.
Deputy Martin testified that after making repeated attempts to calm him, the defendant [Mr. Brown] continued to resist his efforts. The defendant [Mr. Brown] grew increasingly belligerent, yelling expletives and racial slurs. Deputy Martin ordered the defendant [Mr. Brown] to drop his weapon and he refused. Deputy Martin then fired shots at the defendant [Mr. Brown]. The 911 supervisor authenticated the tape of the *647 911 call received in connection with the incident, in which a code 108, “officer needs assistance,” request was made.
Brown, 09-0863 at pp. 12-13, 26 So.3d at 852-53.
In opposing the summary judgment, Mr. Brown submitted excerpts from the criminal transcript and his own affidavit.[4] In his affidavit, which is dated January 6, 2010, Mr. Brown attested that:
|fil. When Deputy Martin approached me I did not know he was a peace Deputy or law enforcement officer.
2. I armed myself only to protect my life and the lives of my companions as we were being threatened by the occupants of a red truck.
3. I would have been relieved to know that Deputy Martin was providing security as he did nothing in my presence to get rid of the threat presented by the occupants of the red truck and the truck itself.
4. I was shot five or six times and critically wounded as a result of those nine shots fired by Deputy Martin, (see exhibit “B”, an excerpt of my initial hospitalization and diagnosis.)
5. I had never formed the intent to fire my weapon at anyone before I was shot.
6. I never threatened Deputy Martin as I had nothing going on with him.
7. I merely reacted to a loud voice behind me which caused me to turn my body while armed.
The trial court granted Central Parking’s motion for summary judgment, denied Mr. Brown’s motion for new trial, and certified its judgment as final.[5] This appeal followed.
DISCUSSION
Appellate courts review the grant of a summary judgment motion de novo using the same standard applied by the trial court in deciding the motion for summary judgment. Samaha v. Rau, 07-1726, p. 3 (La.2/26/08), 977 So.2d 880, 882-83. In determining whether summary judgment is appropriate the two issues a court must resolve are whether there is any genuine issue of material fact, and whether the mover is entitled to judgment as a matter of law. Ocean Energy, Inc. v. Plaquemines Parish Gov’t, 04-0066, p. 4 (La.7/6/04), 880 So.2d 1, 5. Summary Ifijudgment shall be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966 B.
A genuine issue is one as to which reasonable persons could disagree; if reasonable persons could reach only one conclusion, there is no need for trial on that issue and summary judgment is appropriate. Hines v. Garrett, 04-0806, p. 1 (La.6/25/04), 876 So.2d 764, 765. A fact is material if it potentially insures or precludes recovery, affects a litigant’s ultimate success, or determines the outcome of the legal dispute. Id. (citing Smith v. Our Lady of the Lake Hosp., Inc., 93-2512, p. 27 (La.7/5/94), 639 So.2d 730, 751). Simply stated, a “material” fact is “one that *648 would matter on the trial on the merits.” Smith, supra.
The party seeking the summary judgment has the initial burden of affirmatively showing the absence of a genuine issue of material fact. Allen v. Integrated Health Services, Inc., 32,196, p. 3 (La.App. 2 Cir. 9/22/99), 743 So.2d 804, 806. After the mover has met its initial burden of proof, the burden shifts to the non-moving party to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden at trial. La. C.C.P. art. 966(C)(2). If the non-moving party fails to meet this burden, there is no genuine issue of material fact, and the mover is entitled to summary judgment. La. C.C.P. art. 966; Schwarz v. Administrators of Tulane Educational Fund, 97-0222, p. 4 (La.App. 4 Cir. 9/10/97), 699 So.2d 895, 897.
“Favored in Louisiana, the summary judgment procedure ⅛ designed to secure the just, speedy, and inexpensive determination of every action’ and shall be construed to accomplish these ends.” King v. Parish National Bank, 04-0337, p. 7 JjCLa.10/19/04), 885 So.2d 540, 545 (quoting La. C.C.P. art. 966(A)(2)). Despite the legislative mandate that summary judgments are now favored, factual inferences reasonably drawn from the evidence must be construed in favor of the party opposing the motion, and all doubt must be resolved in the opponent’s favor. Jeanmarie v. Peoples, 09-1059, p. 7 (La.App. 4 Cir. 3/16/10), 34 So.3d 945, 950 (citing Willis v. Medders, 00-2507, p. 1 (La.12/8/00), 775 So.2d 1049, 1050 (citing Independent Fire Ins. Co. v. Sunbeam Corp., 99-2181, 99-2257, pp. 16-17 (La.2/29/00), 755 So.2d 226, 236)).
Central Parking’s motion for summary judgment was based on the affirmative defense of self-defense — that it could not be liable because its employee, Deputy Martin,[6] was acting in self-defense when “he fired at the pistol [wjielding plaintiff after the plaintiff threatened to kill the uniformed deputy.” As the party pleading an affirmative defense Central Parking had the burden of proof. Jeanmarie, 09-1059 at p. 6, 34 So.3d at 950 (citing Touro Infimary v. Marine Medical Unit, Inc., 96-2506, p. 6 (La.App. 4 Cir. 5/12/97), 699 So.2d 90, 93).
Because the applicable substantive law determines materiality, whether a particular fact in dispute is material can be seen only in light of the substantive law applicable to the case. Richard v. Hall, 03-1488, p. 5 (La.4/23/04), 874 So.2d 131, 137. The law on self-defense involving deadly force is that generally “a person cannot use ‘deadly force’ (force likely to cause death or great bodily harm) unless he reasonably believes he is threatened with serious bodily harm.” Frank L. Ma-raist and Thomas C. Galligan, Jr., Louisiana Tort Law, § 2.09[2] (2nd ed. 2009)(Maraist & Galligan)(citing Mathews v. Stewart, 293 So.2d 209 (La.App. 3rd lsCir.1974)).[7] The factors the jurisprudence considers in deciding whether the circumstances justified the use of deadly force include: (i) the character and reputation of the attacker, (ii) the attacker’s belligerence, (iii) the difference in size and *649 strength between the parties, (iv) the attacker’s overt acts or threats of bodily harm, and (v) the possibility of a peaceful retreat. Roberts v. Boudreaux, 472 So.2d 166, 168 (La.App. 5th Cir.1985)(citing Levesque v. Saba, 402 So.2d 266, 270 (La.App. 4th Cir.1981)). “Many of these are the same factors applicable in any self-defense case.” Maraist & Galligan, supra.[8]
Applying these factors to the facts of this case, we find the record reflects that the attacker, Mr. Brown, was belligerent— hostile and ready to start a fight. Indeed, Deputy Martin testified that he attempted to calm Mr. Brown down and instructed Mr. Brown to go home and cool off. The record further reflects that Mr. Brown engaged in an overt act — aimed a gun at Deputy Martin — and threatened bodily harm — threatened to kill. An analysis of these facts thus supports a finding that Deputy Martin was justified in using deadly force.
Similar to the determination of comparative fault, the issue of the applicability of the affirmative defense of self-defense is a fact-intense, totality of the circumstances determination. Freeman v. Teague, 37,982, pp. 5-6 (La.App. 2 Cir. 12/10/03), 862 So.2d 371, 374. As such, this determination is generally 1 Inappropriate for summary judgment. However, where reasonable minds cannot differ, the question of self-defense with a dangerous weapon is a question of law that may be resolved by summary judgment. Id.; Rance v. Harrison Co., 31,503, pp. 7-8 (La.App. 2 Cir. 1/20/99), 737 So.2d 806, 810 (holding when reasonable minds cannot differ, the question of comparative negligence is a question of law appropriate for summary judgment).
Mr. Brown acknowledges that his conviction for aggravated assault of a peace officer with a firearm can be used to establish that Deputy Martin was placed in a reasonable apprehension of receiving a battery. However, he contends that does not mean Deputy’s Martin’s subsequent actions of shooting him six to seven times were reasonable. He further contends that the outcome of the criminal case is not dispositive of this civil case. Mr. Brown’s argues that “[t]he undisputed facts in this case are that the Plaintiff was shot at nine times and was struck, six to seven times while the Plaintiff never fired his gun.” He points out that in his petition he alleged that the shots Deputy Martin fired at him were disproportionate to the degree of force necessary because after being shot, he fell down and then was repeatedly shot after he was already on the ground. The particular paragraph of the petition reads:
Taraunce Charles Martin observed the Petitioner pull the handgun out of his pocket and immediately drew his firearm and pointed it at the Petitioner. When Petitioner turned in the direction of Taraunce Charles Martin, Taraunce *650 Charles Martin fired at the Petitioner, knocking him to the ground. Taraunce Charles Martin then looked down at the Petitioner and fired at least fire more shots at the Petitioner, hitting him four more times and critically wounding him.
|inMr. Brown’s primary contention is that summary judgment was improper because a genuine issue of material fact exists regarding whether Deputy Martin used excessive force. In support of this contention, Mr. Brown cites the testimony of the State’s three witnesses at the criminal trial. First, he cites Deputy Martin’s testimony that he remembered firing once, looking down, thinking that he heard return fire, and firing four more rounds. Second, he cites Ms. (Deputy)[9] Gibson’s testimony that within a couple of shots Mr. Brown was down. Third, he cites Deputy Wilson’s testimony that he did not shoot his gun because once Mr. Brown was hit there was no need for him to fire. Based on this evidence, Mr. Brown contends that there is a genuine issue of material fact.
Central Parking counters that the State’s three witnesses all testified that Deputy Martin stopped shooting as soon as Mr. Brown went down. Although Ms. (Deputy) Gibson testified that Mr. Brown was down “[wjithin a couple of shots,” she further testified that she did not see Deputy Martin stand over Mr. Brown and shoot. Deputy Wilson testified that “[o]nce he [Mr. Brown] fell, that was the end of the shooting.” Deputy Martin testified that that he shot Mr. Brown until he went down. Deputy Martin further testified that he thought he shot Mr. Brown about five times and denied shooting him again after he hit the ground.
The opponent to a properly supported motion for summary judgment may not rest on the mere allegations or denials of his or her pleadings, but must respond by affidavits or as otherwise provided by law setting forth specific facts showing that there exists a genuine issue of material fact for trial. Coates v. Anco Insulations, Inc., 00-1331, p. 5 (La.App. 4 Cir. 3/21/01), 786 So.2d 749, 753. If he does not so respond, summary judgment, if appropriate, shall be rendered against him. La. C.C.P. art. 967. Such is the case here. The record is devoid of any evidence supporting Mr. Brown’s contention that Deputy Martin used unreasonable force. Although Mr. Brown submitted his own affidavit in opposition to the motion for summary judgment, his affidavit does not state that Deputy Martin continued to shoot once Mr. Brown was on the ground.
Mr. Brown contends, in his brief, that “[discovery as to the trajectory of the bullets and the angle of entry can certainly be sought through the use of medical experts and since none of the bullets exited the Plaintiffs body, it is reasonable to assume that the Plaintiff was lying on a hard surface, such as the ground, that prevented the six to seven bullets from exiting the Plaintiffs body.” Mr. Brown’s speculation regarding the potential outcome of discovery, which was never requested in the trial court, is insufficient to establish a genuine issue of material fact. ‘While parties should be given a fair opportunity to present their claim, there is no absolute right to delay action on a motion for summary judgment until discovery is completed.” Jeanmarie, 09-1059 at pp. 8-9, 34 So.3d at 951. In this case, as Central Parking points out, Mr. Brown neither conducted any discovery nor repre *651 sented that any discovery was needed before the trial court decided the motion for summary judgment. The record thus supports the trial court’s decision granting Central Parking’s motion for summary judgment.

DECREE

For the foregoing reasons, the judgment of the trial court is affirmed.
AFFIRMED.

. Both Deputy Martin and Deputy Wilson were off-duty New Orleans criminal sheriff deputies who were working an approved paid private security detail at Central Parking’s Conti Street lot. Both of them worked full-time for the criminal sheriff's office transporting inmates to court and to medical appointments. At Central Parking, their responsibilities included patrolling the parking lot in question. At the time of the incident, both deputies were dressed in their sheriff uniforms. Although there is some dispute as to whether Deputy Martin's badge was visible, the factual dispute regarding the visibility of Deputy Martin’s badge does not create a genuine issue of material fact because it is not pertinent to the self-defense issue before us. The record in the criminal proceeding, which was introduced, “reflects that Deputy Martin was wearing his full deputy uniform with his badge clearly displayed on the front of jacket when he approached the defendant.” State v. Brown, 09-0863, p. 12 (La.App. 4 Cir. 12/2/09), 26 So.3d 845, 852.

. Although Deputy Martin indicated that Mr. Brown was shouting racial expletives, the trio *646 and the occupants of the red truck were all Caucasians.

. Mr. Brown states in his petition that before the shooting, he "was employed by the United States Army and had served in Iraq. He has also been accepted into his local police academy and was scheduled to begin his employment the day after the shooting.”

. Although Mr. Brown in his brief represents that he opposed the introduction of the entire transcript of the criminal trial, he does not assign as error the trial court's decision to allow the entire transcript to be considered on the motion for summary judgment.

. Although the trial court’s judgment is certified as final, the judgment dismisses a party and thus, by definition, is final without being designated as such. La. C.C.P. art. 1915 A(l).

. For purposes of the motion for summary judgment it is taken as true that Deputy Martin was acting within the course and scope of his employment with Central Parking.

. We note that in 2006, the Legislature provided by statute, that "any person who uses reasonable and apparently necessary or deadly force to prevent a forcible offense against the person or his property, in accordance with La. R.S. 14:19 or 20 (criminal provisions governing self defense and justifiable homicide), is immune from civil action for the use of such force." Maraist & Galligan, supra.

. As Mr. Brown points out, the use of force by law enforcement officers is governed by the reasonable force standard under La. C.Cr.P. art. 220 (which governs use of force for a lawful arrest) and Kyle v. City of New Orleans, 353 So.2d 969 (La.1977). To determine whether an officer acted reasonably under the circumstances the jurisprudence considers the so-called Kyle factors; to wit: (1) the known character of the arrestee; (2) the risks and dangers faced by the officer; (3) the nature of the offense involved; (4) the chance of the arrestee's escape if the particular means are not employed; (5) the existence of alternative methods of arrest; (6) the physical size, strength, and weaponry of the officer as compared to the arrestee; and (7) the exigency of the moment. See also Mathieu v. Imperial Toy Corp., 94-0952 (La. 11/30/94), 646 So.2d 318 (finding Kyle factors apply in judging an officer’s reasonableness in approaching a suspect). Many of these factors are the same factors used in analyzing self-defense with deadly force.

. As noted elsewhere, Ms. Gibson was an off-duty deputy who coincidentally was in the area and witnessed the shooting.